UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEE MICHAEL STERHAN,

    Petitioner,

v.                                          Case No. 2:10-cv-278
                                          HON. ROBERT HOLMES BELL

GREG MCQUIGGIN,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Lee Michael Sterhan, filed this petition for writ of habeas corpus challenging his jury conviction for first-degree home invasion, felon in possession of a firearm, resisting a police officer and two counts of possession of a firearm while committing a felony . The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

    The petition asserts:

    I. That prosecutorial misconduct denied petitioner due process and a fair trial.

    II. That the trial court made improper evidentiary rulings and failed to the enforce time limitations in the insanity statute, Mich Comp laws § 768.20a(7).

    III. That the trial court erred in allowing a vindictive prosecutor to amend the information to add first degree home invasion.

    IV. Whether the prosecutor presented sufficient evidence to support the entry of a dwelling with intent to assault charge?

V. Whether the prosecutor presented sufficient evidence to support the claim that petitioner assaulted, resisted or obstructed police officers?

VI. Trial court erred by admitting evidence of two prior convictions to support the felon in possession charge when only one conviction was necessary.

VII. The cumulative effect of the errors denied petitioner a fair trial.

VIII. Whether petitioner's Sixth Amendment rights, Fourteenth Amendment rights, equal protection rights, and double jeopardy protections were violated by the denial of credit for pre-sentence jail time?

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the

Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption

of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner raises several claims of prosecutorial misconduct. In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel, and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

The Michigan Court Appeals denied each of petitioner's claims explaining:

> Defendant first contends that the prosecutor engaged in misconduct when he played for Dr. Pastyrnak, outside the presence of the jury, an unredacted recording of a conversation between defendant and his mother while defendant was in jail. The conversation occurred on June 1, 2006, just after Dr. Pastyrnak had evaluated defendant, and suggested that he was fabricating the insanity defense. When the prosecutor began cross-examining Dr. Pastyrnak about the tape in the jury's presence, defendant objected and the trial court sustained his objection.
>
> We reject defendant's assertion that when the prosecutor played for Dr. Pastyrnak off the record the recorded jail conversation between defendant and his mother, the prosecutor knowingly violated the trial

court's evidentiary ruling precluding admission of the recording at trial. The trial court's ruling only applied to the admissibility of defendant's mother's statements in the recording. It did not prevent Dr. Pastyrnak from listening to the recorded conversation off the record. Additionally, the prosecutor never revealed the substance of the recorded conversation to the jury.

Defendant also maintains that the prosecutor's questions, which elicited Dr. Pastyrnak's testimony that the unredacted conversation caused his confidence in his opinion to waver, amounted to misconduct because MRE 703 prohibits an expert from offering an opinion based on inadmissible evidence. MRE 703 provides:

> The facts or date in the particular case upon which an expert bases an opinion or inference shall be in evidence. This rule does not restrict the discretion of the court to receive expert opinion testimony subject to the condition that the factual bases of the opinion be admitted in evidence thereafter.

On several occasions during trial, the trial court addressed the applicability of MRE 703 on cross-examination. None of the court's rulings suggested that it would not permit the prosecutor to question Dr. Pastyrnak about how and whether his opinion had changed based on the unredacted recording. Because nothing in the record makes apparent that the prosecutor was clearly trying to elicit prohibited testimony as defendant asserts, the prosecutor's good faith effort to admit evidence does not constitute misconduct.

Although Dr. Pastyrnak testified that his consideration of additional evidence caused his level of confidence in his original opinion that defendant was insane to diminish, and referenced the recorded conversation between defendant and his mother as one part of the basis for his decreased level of confidence, the trial court sustained defendant's objection with regard to any opinions premised on the recorded conversation, and the substance of that conversation was never disclosed to the jury. The trial court later instructed the jury to disregard excluded evidence or stricken testimony, and jurors presumptively follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Furthermore, a review of Dr. Pastyrnak's testimony reveals that more than just the recording caused his confidence in his original opinion regarding defendant's sanity to waver. He admitted that his consideration of other evidence also affected the confidence level of his original opinion. Moreover, despite Dr. Pastyrnak's wavering testimony with regard to

- 5 -

defendant's sanity, Dr. Pastyrnak remained steadfast in his belief that defendant had a mental illness that impaired his judgment. The jury had the option of finding defendant guilty but mentally ill, but declined to do so. The jury's rejection of that option signifies that the jury rejected even the portion of Dr. Pastyrnak's opinion that had not wavered. Consequently, the prosecutor's conduct did not deprive defendant of a fair trial.

Defendant also avers that the prosecutor improperly attacked defense counsel during closing argument, denying him a fair trial. A prosecutor may not personally attack defense counsel. *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003).

The challenged portion of the prosecutor's argument reads as follows:

> The second thing I want to say though is this, is that they knew what they were calling. They knew what there were doing in this case. I mean, I submit to you that this was a very strategic decision by the defense to call this kind of a poorly qualified expert who has never tried to do this before. That was their strategic decision. They probably didn't think he would implode the way he did on the witness stand, I will grant you that, but going into this case they wanted that kind of expert.

The prosecutor did not personally attack defense counsel, but rather commented on her choice of expert. The testimony disclosed that Dr. Pastyrnak had never testified before regarding a defendant's legal sanity and was not an experienced forensic evaluator. In light of Dr. Pastyrnak's dearth of experience and his wavering testimony at trial, the prosecutor's remarks fairly commented on the evidence and the reasonable inferences arising from it. And the prosecutor need not phrase his inferences in the blandest possible terms. *Dobek, supra* at 66. Therefore, the prosecutor's remarks were proper.

Lastly, defendant argues that the prosecutor committed misconduct by frequently asking questions that were not supported by the evidence. However, defendant does not specifically identify any instances when this occurred. Therefore, he has abandoned appellate review of this argument. *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006).

The Michigan Court of Appeals set forth a reasonable analysis of why petitioner's claims lack merit. Petitioner has failed to show that the prosecutor engaged in misconduct or that his trial was unfair as a result of the prosecutor's conduct. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Further, petitioner's claims regarding evidentiary rulings made by the trial court are not claims that are actionable in a habeas proceeding. "[S]uch an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the

denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. Petitioner's claimed evidentiary errors were each rejected by the Michigan Court of Appeals. The Michigan Court of Appeals' decision was reasonable. Moreover, petitioner has failed to show that the court's evidentiary rulings rose to the level of a constitutional violation.

Similarly, petitioner raises the state law claim that the court improperly allowed the prosecutor to amend the information to add an alternative theory on the first degree home invasion claim. Petitioner has not established that his due process rights were violated by the addition of this theory of his crime. The Michigan Court of Appeals rejected this claim stating:

> The original information charged defendant with first-degree home invasion under a theory that he broke into Mura's house with the intent to commit assault, two counts of felony-firearm, felon in possession of a firearm, and resisting or obstructing a police officer. Eight days before trial began, the prosecutor filed a motion to amend the information to add an alternative theory to the home invasion charge, specifically that defendant broke into Mura's house and therein committed a felony, i.e., felon in possession of a firearm. The trial court determined that the amendment would not cause unfair surprise or prejudice to defendant because the prosecutor had charged both home invasion and felon in possession of a firearm in the original information. Although the prosecutor filed the motion to amend just over a week before trial, defendant had notice of the separate charges in the original information. We conclude that the trial court did not abuse its discretion by granting the prosecutor's motion to amend because adding felon in possession as an alternative theory in support of the home invasion charge did not substantively require defendant to defend against a new charge, and defendant

> already had notice that he had to defend against a felon in possession of a firearm charge.
>
> Defendant also submits that the prosecutor's motion to amend constituted prosecutorial vindictiveness. Prosecutorial vindictiveness occurs when a prosecutor violates a criminal defendant's due process rights by prosecuting him for asserting a protected statutory or constitutional right. *People v Ryan*, 451 Mich 30, 35-36; 545 NW2d 612 (1996). The two types of prosecutorial vindictiveness are presumed vindictiveness and actual vindictiveness. *Id*. at 36. Actual vindictiveness exists when objective evidence shows an expressed hostility or threat that suggests the defendant was deliberately punished for the exercise of a protected right. *Id*. The defendant has the burden to demonstrate actual vindictiveness. *Id*.
>
> A presumption of prosecutorial vindictiveness arises "only in cases in which a reasonable likelihood of vindictiveness exists." *United States v Goodwin*, 457 US 368, 373; 102 S Ct 2485; 73 L Ed 2d 74 (1982). "[R]egarding presumptive vindictiveness, this Court held that 'it is well established that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is not sufficient to warrant *presuming* that subsequent changes in the charging decision are vindictive and therefore violative of due process.'" *People v Jones*, 252 Mich App 1, 8; 650 NW2d 717 (2002) (emphasis in original), quoting *People v Goeddeke*, 174 Mich App 534, 536; 436 NW2d 407 (1988). Therefore, in this case defendant bore the burden of proving actual vindictiveness.
>
> Defendant's only proffered evidence of vindictiveness is the prosecutor's statement that he routinely would "review the files before trial to see if there is [sic] other charges that can or should be brought." No reasonable interpretation of this statement conveys "an expressed hostility or threat" toward defendant designed to punish him for exercising his right to a trial. Instead, it describes a routine practice of thorough trial preparation. Therefore, the trial court did not clearly err in finding that the prosecutor's motion to amend did not constitute prosecutorial vindictiveness.

The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that he was convicted of first degree home invasion and resisting and obstructing a police officer with insufficient evidence. The Michigan Court of Appeals rejected each of these claims.

### A. First-Degree Home Invasion

Defendant avers that the trial court erred in denying his motion for a directed verdict on the home invasion charge under the theory that he broke into Mura's house intending to commit an assault. Defendant maintains that insufficient evidence proved that he intended to assault Mura. An assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. *People v Musser*, 259 Mich App 215, 223; 673 NW2d 800 (2003). Circumstantial evidence and the reasonable inferences drawn from it may suffice to prove the elements of the crime. *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001).

Before defendant left Mura's house in the early morning hours, he threatened to return and kill her. Although Mura did not believe that defendant would return, he did. Defendant broke into her house and her bedroom. He wore a mask and possessed a gun. After removing the mask, defendant told Mura that he felt upset that she had called the police. He pulled the gun out of his waistband and held it in his hand, causing Mura to be scared. Although defendant did not point the gun directly at Mura, he need not have done so to have intended an assault. Viewing the evidence in the light most favorable to the prosecution, a reasonable jury could have inferred beyond a reasonable doubt from defendant's actions that he intended to assault Mura by placing her in fear of receiving an imminent battery.

### B. Resisting or Obstructing a Police Officer

Defendant also asserts that insufficient evidence established that he resisted or obstructed a police officer. Pursuant to MCL 750.81d(1), "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony[.]" To be guilty of this offense, a person must know or have reason to know that the officer is performing his duties, and the knowledge element requires the factfinder to determine whether the facts and circumstances of the case substantiate that the defendant had actual knowledge or reason to have actual knowledge that the person

> resisted and was an officer performing his duties. *People v Ventura*, 262 Mich App 370, 377; 686 NW2d 748 (2004).
>
> Defendant asserts that no evidence tended to prove that he knew the police were giving commands, that he heard the commands, or that he assaulted, resisted, or obstructed the police. When defendant exited Mura's house, numerous marked patrol cars had arrived outside, and police officers in uniform and marked tactical gear had gathered around the scene. Trooper Brian Cribbs identified himself as the police, and several times ordered defendant to get down on the ground. Defendant showed his defiance by yelling profanities and continuing to walk toward the car. The police tazered defendant after he turned toward the officers and reached toward his waistband. Officer Chris Mahoney also testified that defendant failed to cooperate, moving his hands around in an apparent attempt to thwart being handcuffed, and yelled.
>
> This evidence sufficed to enable a rational jury to find beyond a reasonable doubt that defendant knew or should have known that Trooper Cribbs was a police officer attempting to apprehend him, and that he intentionally resisted Trooper Cribbs's and other officers' efforts to handcuff him. The fact that defendant was tazered did not signify that he could not physically control his arms when Trooper Cribbs tried to handcuff him. In summary, the trial court did not err when it denied defendant's motion for a directed verdict on this basis.

A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* It is clear that the evidence was sufficient to establish that petitioner committed these crimes. The Michigan Court of Appeals' decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that he was denied a fair trial because evidence of two prior felonies were admitted to support the felon in possession charge, when only evidence of one felony should have been admitted into evidence. The Michigan Court of Appeals found that this error was harmless because petitioner was asserting an insanity defense and not his identity of the fact of the commission of the offense. Therefore, the admission of the two prior felonies "bore no relevance to the issue of defendant's sanity."

In order to justify habeas relief based on the state trial court's error, the petitioner must show that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 1722 (1993); *O'Neal v. McAninch*, 513 U.S. 432 (1995); *Kotteakos v. United States*, 328 U.S. 750, 66 S. Ct. 1239 (1946). The Supreme Court stated "if one cannot say with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected," *Kotteakos,* 328 U.S. at 750, 66 S. Ct at 1248, and if a judge is in "grave doubt" as to whether a constitutional error had a substantial effect on a jury, that error is not harmless and the petitioner must win. *O'Neal*, 115 S. Ct. at 995. Under *Brecht*, petitioner must show that the trial error resulted in actual prejudice.

The Michigan Court of Appeals explained:

> The prosecutor had to establish defendant's status as a convicted felon to prove the felon in possession of a firearm charge. Because defendant did not stipulate to the existence of a prior felony conviction, the prosecutor properly could present evidence of defendant's prior felony conviction. *People v Nimeth*, 236 Mich App 616, 627; 601 NW2d 393 (1999), citing *Old Chief v United States*, 519 US 172; 117 S Ct 644; 136 L Ed 2d 574 (1997). However, the trial court abused its discretion in allowing the prosecutor to present evidence of two prior felony convictions when only one conviction was necessary. The prosecutor presented certified evidence of defendant's prior conviction, and defendant did not present any

> evidence contesting the validity of the prior conviction, so no reasonable basis existed for the jury to disbelieve the validity of the conviction. The second conviction, even if technically relevant to the felon in possession charge, qualified as cumulative and unduly prejudicial.
>
> Nevertheless, we conclude that the error was harmless beyond a reasonable doubt because the prosecutor introduced overwhelming, properly admitted evidence of defendant's guilt on all the charges against him. *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005). The principal issue at trial involved defendant's sanity, not his identity or his commission of the charged offenses. The erroneous admission of the additional prior conviction bore no relevance to the issue of defendant's sanity. Therefore, reversal is not required.

The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that the cumulative effect of the errors denied him a fair trial. Petitioner's claim lacks merit because he failed to show that errors were made during his trial that not only implicated his constitutional rights but also affected the outcome of the trial. Further, petitioner's claim that he was denied jail credit for time served pretrial is without merit. The Michigan Court of Appeals stated:

> Lastly, defendant contends that he is entitled to jail credit for time served awaiting trial for the instant offenses, despite that he was held on a parole detainer. Defendant acknowledges that this Court has repeatedly held that a parole detainee who is convicted of a new criminal offense cannot claim credit against his new sentences for time served in jail as a parole detainee. *People v Stead*, 270 Mich App 550, 551-552; 716 NW2d 324 (2006); *People v Seiders*, 262 Mich App 702, 705; 686 NW2d 821 (2004). Nonetheless, defendant insists that a denial of credit in this situation violates a parolee's equal protection rights because the parolee has already served his minimum sentence and, accordingly, there is no prior sentence against which credit may apply. But defendant ignores that even though a parolee

> may have served the minimum portion of his prior sentence, he still remains "liable . . . to serve out the unexpired portion of his or her *maximum* imprisonment" if arrested for "violating the provisions of his or her parole." MCL 791.238(2) (emphasis added). Because defendant's jail credit applies toward the maximum term of his prior punishment, his argument lacks merit.

Petitioner cannot assert an actionable claim on this issue. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 28, 2014